UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES B., JR.,

    Plaintiff,

v.                                                  Hon. Sally J. Berens

COMMISSIONER OF                        Case No. 1:24-cv-479
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including entry of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed applications for DIB and SSI on June 23, 2021, alleging that he became disabled as of November 1, 2019, due to history of closed head injury, seizures, blood on the brain, history of heart attack, and GERD. (PageID.90, 212–25.) Plaintiff was 46 years old at the time of his alleged onset date and 47 years old at the time he filed his applications. (PageID.90.) He had completed one year of college and had past work as a short order cook. (PageID.36, 250.) After

2

Plaintiff's applications were denied, he requested a hearing before an Administrative Law Judge (ALJ).

ALJ Cynthia Harmon conducted a telephone hearing on May 25, 2023, at which Plaintiff and independent Vocational Expert (VE) Michelle Ross testified. (PageID.51–86.) The ALJ issued a written decision on June 22, 2023, finding that Plaintiff had not been disabled from his alleged onset date through the date of the decision. (PageID.27–45.) The Appeals Council denied Plaintiff's request for review on March 5, 2024. (PageID.11–13.) The ALJ's ruling thus became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff initiated this action for judicial review on May 7, 2024.

## Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Under federal law, an individual "shall not be considered to be disabled" if "alcoholism or drug addiction" is found to be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). In order to determine whether alcoholism or drug addiction constitutes a "contributing factor material" to the finding of disability, the ALJ must determine whether the claimant would be disabled "if [he] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535, 416.935; *see also Johnson–Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 415 (6th Cir. 2012).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (PageID.30.) The ALJ then determined that Plaintiff suffered from (1) alcohol use disorder; (2) alcoholic withdrawal seizures; (3) alcoholic peripheral neuropathy; (4) history of ventricular fibrillations; (5) alcoholic cardiomyopathy; (6) pulmonary nodules; (7) COPD; (8) depressive disorder; (9) anxiety disorder; (10) borderline intellectual

functioning; (11) traumatic brain injury; (12) encephalomalacia; (13) iron deficiency anemia; (14) left knee osteoarthritis; and (15) hypertension, severe impairments that, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.30–32.)

The ALJ determined that based on all of Plaintiff's impairments, including substance abuse, Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b):

> except occasional ramps and stairs; never climb ladders/ropes/scaffolds; occasional stoop/kneel/crouch/crawl; avoid concentrated exposure to extreme cold, heat, humidity and to pulmonary irritants such as fumes dusts odors or gases; avoid vibration and dangerous workplace hazards such as unprotected heights or dangerous moving machinery; is able to understand and remember and carry out simple instructions that do not involve complex decision making or judgment; can tolerate occasional changes in a routine work setting; cannot be required to work at a production rate pace such as assembly line work; or have hourly quota requirements; but is able to complete daily quotas by end of day; can have occasional interact with co-workers, supervisors and the general public; would be absent more than 2 days per month and off-task more than 15% of the workday.

(PageID.33.)

At steps four and five, the ALJ determined that, with this RFC, Plaintiff is unable to perform his past relevant work as a short order cook, and there are no jobs existing in significant numbers in the national economy that he could perform. (PageID.33–37.)

The ALJ found that if Plaintiff stopped the substance abuse, he would still suffer from "a severe impairment or combination of impairments," but that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.38.) The ALJ further determined, however, that if Plaintiff stopped the substance abuse, he would retain the RFC to perform light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b) as follows:

5

> except occasional ramps and stairs; never climb ladders/ropes/scaffolds; occasional stoop/kneel/crouch/crawl; avoid concentrated exposure to extreme cold, heat, humidity and to pulmonary irritants such as fumes dusts odors or gases; avoid vibration and dangerous workplace hazards such as unprotected heights or dangerous moving machinery; is able to understand and remember and carry out simple instructions that do not involve complex decision making or judgment; can tolerate occasional changes in a routine work setting; cannot be required to work at a production rate pace (such as assembly line work); or have hourly quota requirements; but is able to complete daily quotas by end of day; can have occasional interact with co-workers, supervisors and the general public.

(PageID.40–41.)

The ALJ found that, in the absence of substance abuse, Plaintiff would still be unable to perform his past relevant work. (PageID.43.) However, based on the VE's testimony, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of light assembler, cleaner, and inspector, 510,000 of which existed in the national economy. (PageID.44.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises three issues in his appeal: (1) the ALJ failed properly to evaluate Plaintiff's substance abuse disorder; (2) the ALJ failed properly to evaluate the treating source opinions of Dylan Streb, D.O.; and (3) the ALJ failed properly to evaluate Plaintiff's residual functional capacity and Plaintiff's allegations of pain and dysfunction. (ECF No. 6 at PageID.2525.)

### I.   Whether the ALJ Properly Evaluated Plaintiff's Substance Abuse Disorder

Plaintiff contends that the ALJ erred in determining that his substance abuse disorder was a contributing factor material to her determination of disability. In particular, Plaintiff contends that the ALJ failed to cite evidence in the record supporting her finding that Plaintiff's limitations

6

from his mental impairments improved in the absence of alcohol abuse and failed to articulate sufficiently her rationale for this finding. (ECF No. 6 at PageID.2526–29.)

Social Security Ruling 13-2p explains the evaluation of cases involving substance abuse disorders. SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), *amended*, March 22, 2013. Once an ALJ finds that a substance abuse disorder is a medically determinable impairment (MDI), the ALJ must determine whether the claimant is disabled considering all his impairments, including substance abuse. *Id.* at *4. If the ALJ finds that the claimant is disabled considering all impairments, including substance abuse, the ALJ must apply a second sequential evaluation process to determine whether: (1) the claimant's other MDIs are disabling in and of themselves while the claimant is abusing drugs or alcohol; or (2) substance abuse is causing or affecting the claimant's other MDIs to the point where they could be found nondisabling in the absence of substance abuse. *Id.* at *6–7. In other words, the ALJ "evaluate[s] which of 'the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416/935(b). Where the claimant has at least one other MDI that could be disabling by itself, the ALJ must determine whether the other impairment might improve to the point of nondisability if the claimant stopped using drugs or alcohol. SSR 13-2p, 2013 WL 621536, at *7. At this step, the ALJ "must project the severity of the claimant's other impairment(s) in the absence of [substance abuse]." *Id.* The ALJ makes this finding based on the medical evidence in the record and may consider medical opinion evidence "about the likely remaining medical findings and functional limitations the claimant would have in the absence of [substance abuse]."[2] *Id.* The

---

[2] If the claimant has a mental impairment, the ALJ may not rely "exclusively on medical expertise and the nature of a claimant's mental disorder." 2013 WL 621536 at *7. Instead, the ALJ must follow the usual case development rules and procedures in assembling evidence of whether

7

claimant's substance abuse disorder is material if the claimant's other impairments would improve to the point that the claimant would not be disabled in the absence of substance abuse. Conversely, if the claimant's other remaining impairments would not improve to the point that the claimant would not be disabled, the ALJ finds that substance abuse is not material to the determination of disability and allows the claim. *Id.* at *8. As with the burden of proving disability in general, the claimant bears the burden of proving that substance abuse is immaterial. *Id.* at *4.

During the first application of the sequential evaluation, when Plaintiff was abusing alcohol, the ALJ determined that Plaintiff had moderate limitations in the four areas of mental functioning referred to as the "paragraph B" factors: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (PageID.31–32.) The ALJ also found that Plaintiff suffered seizures, cardiomyopathy, tachycardia, cardiac arrest, altered mental status, anemia, nausea, vomiting, and stool incontinence, all of which related to his alcohol abuse. (PageID.33–35, 364–531, 534, 573, 754–89, 1658–62, 1856, 1858, 1864.) The ALJ summarized her findings as follows: when Plaintiff abuses alcohol, he "requires hospitalizations and life-saving intervention," and "his overuse causes cardiomyopathy, encephalomalacia and anemia, as well as mental status changes requiring medical intervention . . . ." (PageID.36.) The ALJ found that these events "would cause intolerable absenteeism from work and symptoms of his severe impairments would cause him to be off-task more than 15% of the day," thus supporting an RFC limitation of "be[ing] absent more than 2 days per month and off-task more than 15% of the workday." (PageID.33, 36.)

---

substance abuse is material to disability. *Id.* at *10; *see* 20 CFR §§ 404.1512, 404.1513, 416.912, and 416.913.

In the second application of the sequential evaluation, the ALJ found that when Plaintiff was not abusing alcohol, his severe impairments would remain, but "his physical and mental health improves." (PageID.38, 41.) The ALJ found that Plaintiff still was moderately limited in all four broad areas of functioning represented by the "paragraph B" factors when he was not abusing alcohol. (PageID.38–39.) Regarding improvement, the ALJ cited evidence showing improvement in physical and mental impairments in the absence of alcohol abuse. For instance, records from an October 2022 hospitalization indicated that doctors noted that his alcohol-related cardiomyopathy improved because he was not drinking during the hospital stay. (PageID.41, 2401–05.) The ALJ also cited the examiner's findings from a July 12, 2022 consultative psychological evaluation that Plaintiff was not visibly inebriated, was well-oriented and made good eye contact, had spontaneous, clear, and organized speech, was able to focus and concentrate throughout the entire examination, did not exhibit any uncontrolled mental health symptoms, and was able to understand, retain, and follow through on simple to multi-step instructions without limitations. (PageID.42, 1976–79.) Summarizing the evidence, the ALJ observed that "when [Plaintiff] cut down on alcohol his medical and psychological picture improved, he remained able to care for himself and his needs without assistance." (PageID.42.)

Contrary to Plaintiff's argument, the Court concludes that the ALJ properly evaluated Plaintiff's substance abuse disorder and sufficiently articulated her reasons why Plaintiff would be disabled when he was abusing alcohol but not when he was not abusing alcohol. As noted, the ALJ found that Plaintiff would require excessive absences and/or off-task time at work when he was abusing alcohol because his overuse caused physical symptoms—including cardiomyopathy, encephalomalacia, anemia, and mental status changes—requiring hospitalizations and medical intervention. (PageID.36.) For instance, the ALJ cited Plaintiff's October–November 2019

hospitalization, during which he became agitated and was argumentative and uncooperative (PageID.33–34, 627, 641, 642, 644–45, 655–56, 730, 744), his July 2021 emergency department visit, during which he was observed as agitated and combative with some delirium and suicidal threats (PageID.34, 434–37), and his March 30, 2023 visit with his primary care provider in which Plaintiff reported seizures that worsened from fluctuation in alcohol use and depression symptoms aggravated by alcohol use (PageID.35, 2467–71). The ALJ omitted the disabling excessive-absence and time-off task limitation in the second round because "the record show[ed] a decrease in need for hospitalizations and emergency room visits when [Plaintiff] was not abusing alcohol." (PageID.39.) This finding is supported by substantial evidence. Separately, the ALJ cited the consultative examiner's findings, including Plaintiff's ability to focus and concentrate throughout the examination, his denial of depressed feelings, and the lack of uncontrolled mental health symptoms as evidence of improved mental status. (PageID.42.)

Plaintiff contends that the ALJ's materiality finding conflicts with her "paragraph B" findings because they show that Plaintiff's mental impairments had not changed in the absence of his substance abuse disorder. In other words, Plaintiff suggests the ALJ's moderate findings in both rounds of the sequential evaluation show that Plaintiff's mental impairments were still disabling. (ECF No. 6 at PageID.2528.) But that is not necessarily true because, as the ALJ observed, "the limitations identified in the paragraph B criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (PageID.32.) *See* SSR 96-8p, 1996 WL 374184, at *4 (1996) (noting that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"); *Ceol v. Berryhill*, No. 3:15-CV-315, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017)

("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC."); *Stachnik v. Comm'r of Soc. Sec.*, No. 1:17-cv-22, 2018 WL 1402155, at *4 (W.D. Mich. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1382341 (W.D. Mich. Mar. 18, 2018) ("The ALJ's step–3 findings do not undermine his finding that plaintiff retained the RFC for simple, routine tasks that could be learned after a short demonstration or within thirty days."). In addition, the ALJ included the same mental limitations in both RFC findings to account for Plaintiff's moderate limitations, which were not determinative in the disability finding. As set forth above, the ALJ made clear that the disabling limitation included in the first-round RFC addressed the effects of Plaintiff's hospitalizations and emergency room visits, which decreased in the absence of alcohol abuse. (PageID.39–41.)

Because the ALJ applied the proper standard in making the materiality determination, and her determination was supported by substantial evidence, this claim of error is rejected.

**II.    Opinion Evidence**

Plaintiff contends that the ALJ erred in evaluating the opinion of his treating physician Dylan Streb, D.O. Dr. Streb provided opinions in a Medical Questionnaire and a Medical Assessment of Ability to Do Work Related Activities (Physical) dated March 1, 2022 (PageID.1827–28, 1831–33) and in a letter dated November 29, 2022. (PageID.1981.)

In articulating Plaintiff's RFC, the ALJ evaluated the opinion evidence pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her determination of the

11

persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors but is not required to explain how the remaining factors were considered. *See* 20 C.F.R. §§ 404.l520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

The ALJ evaluated Dr. Streb's opinions as follows:

> On March 1, 2022, treating physician Dr. Dylan Streb concluded that the claimant has an inability to concentrate for prolonged periods due to epilepsy, alcohol dependence and encephalomalacia after traumatic brain injury (Exhibit 4F). He also concluded that the claimant does not have limitations in lifting/carrying, standing/walking, and does not need a cane or other assistive device. However, he needs unscheduled breaks every hour for ten minutes and one hour and 20 minutes of rest during the workday. He has no limitations in reaching, handling or fingering. He would have good days and bad days and need to be absent more than 4 days per month from work as a result of his impairments or treatment. Dr. Streb noted that, "the [claimant's] condition makes sustained attention difficulty (sic). Together with alcohol use disorder and history of alcohol withdrawal seizures" the claimant could not work (Exhibit 5F). Dr. Streb notes that the claimant's recommended treatment is tapering alcohol, Gabapentin and a neurology consult (Exhibit 4F). In fact, Dr. Streb prescribed Gabapentin in February 2022 and notably, at his March 29, 2022, visit, the claimant was not sure if he was taking Gabapentin (Exhibit 6F/20, 26). Dr. Streb urged the claimant to consider taking different medications to decrease alcohol use and continue Gabapentin and using any barrier cream. He also ordered

> the claimant to stop Vimpat due to an itchiness side effect (*Id.* at 22). Later, in November 2022, Dr. Streb added that the claimant's "seizures are continuing and making it hard to work. He would benefit from disability…" (Exhibit 8F). At the time of that assessment, Dr. Streb noted the claimant "tries not to drink quite as much," though he still had tremor worsened "by his time away from alcohol." The claimant was not sure if he followed with neurology for seizures, but believed he was having seizures in his sleep. Dr. Streb ordered the claimant to stop prescription Vimpat in March 2022, due to itchiness side effect and continue with Gabapentin (*see Id.* at 26). Moreover, in April 2022, the claimant reported that he had not taken Vimpat (Exhibit 12F/42). And, in November 2022, when the claimant reported he was not taking Vimpat Dr. Streb did not remind of the reason he stopped the medication. I find Dr. Streb's opinion persuasive for the period including the claimant's substance use. It is clear that Dr. Streb's treatment of the claimant considered strongly his use of alcohol though he goes back and forth about the use of alcohol, in his opinion he considered the claimant's alcohol use disorder as a factor in the claimant's ability to work and when factored in he would require an intolerable amount of absences from work or need for breaks during the workday.

(PageID.35–36.) In the second round sequential analysis, the ALJ found Dr. Streb's opinions "not persuasive, when not considering the claimant's substance use disorder, because when the claimant decreases his alcohol use his condition improves, as Dr. Streb noted in his discussions and objective medical treatment of the claimant." (PageID.43.)

Plaintiff contends that the ALJ erred in evaluating Dr. Streb's opinions by failing to articulate her consideration of the supportability and consistency factors when considering the opinion in the absence of Plaintiff's substance abuse. First, he argues that the ALJ failed to recognize that Dr. Streb's opinion concerned Plaintiff's mental dysfunction even in the absence of substance abuse. Plaintiff notes that in the Medical Assessment of Ability to Do Work Related Activities, Dr. Streb indicated that Plaintiff's "condition makes sustained attention difficult," but added, "Together with alcohol use disorder and history of alcohol withdrawal seizures, my opinion is that work would be unsafe." (ECF No. 6 at PageID.2532 (citing (PageID.1833).) Plaintiff thus contends that the ALJ failed to consider Dr. Streb's opinion that he had difficulty maintaining sustained attention even without substance abuse disorder. (*Id.*) Plaintiff also contends that the ALJ failed to consider the opinion regarding the effects of his epilepsy and subarachnoid

13

hemorrhage apart from his alcohol abuse disorder. (*Id.* at PageID.2532–33.) Next, Plaintiff notes that in his November 2022 letter, Dr. Streb said that Plaintiff's condition made it difficult for him to work but did not mention that Plaintiff had a substance abuse disorder. (*Id.* at PageID.2533.) Finally, Plaintiff contends that the ALJ failed to cite any evidence for his conclusion that Dr. Streb's opinion was only relevant when Plaintiff was abusing alcohol. (*Id.*)

Plaintiff's argument essentially is that the ALJ misinterpreted Dr. Streb's opinion by failing to recognize that it pertained to Plaintiff's dysfunction even without alcohol abuse. In resolving this challenge, the Court's review is "limited to whether the ALJ's interpretation of the statements in Dr. [Streb's] opinion was reasonable and supported by substantial evidence." *Oliver v. Kijakazi*, No. 3:22-cv-28, 2023 WL 2587487, at *11 (E.D. Tenn. Mar. 21, 2023) (citing *Brandon v. Astrue*, No. 1:09 CV 857, 2010 WL 1444636, at *3 (N.D. Ohio Apr. 12, 2010) ("The ALJ's interpretation of Dr. Josell's opinion is a reasonable interpretation and is supported by substantial evidence.")). Here, the ALJ considered Dr. Streb's three submissions together in light of the medical evidence, including Dr. Streb's own treatment records, and found that Plaintiff's alcohol use disorder, which featured prominently in Dr. Streb's treatment of Plaintiff, was the determinative factor supporting Dr. Steb's opined limitation requiring an intolerable amount of absences from work or need for breaks during the workday when Plaintiff was abusing alcohol. This interpretation was both reasonable and supported by substantial evidence, including treatment records the ALJ cited in her evaluation of Dr. Streb's statements. The fact that Plaintiff offers a different interpretation of Dr. Streb's statement provides no basis for remand, as it is not the Court's function to reweigh the evidence; rather, the Court's only inquiry is whether a reasonable person could have reached the same conclusion as the ALJ. *See Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 476 (6th Cir. 2003).

Because the ALJ's interpretation was within the permissible "zone of choice" afforded by substantial evidence review, *Mullen*, 800 F.2d at 545, Plaintiff's argument lacks merit.

As for Plaintiff's contention that the ALJ failed to cite any evidence for her conclusion that Dr. Streb's opinion was not persuasive when Plaintiff was not abusing alcohol, the ALJ explained that this was so because Plaintiff's condition improved when he cut down on his alcohol, as reflected in Dr. Streb's statements and treatment notes. Although the ALJ did not cite specific evidence supporting this statement, the Sixth Circuit has emphasized that an ALJ's decision is to be read as a whole, and the ALJ is not required to restate her factual analysis throughout the decision. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review."); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) (stating that "[i]t is proper to read the ALJ's decision as a whole . . . [and] would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision"). In the preceding pages of her decision, the ALJ set forth the evidence supporting her finding that Plaintiff's physical and mental health improved when Plaintiff was not abusing alcohol. (PageID.41–42.) In addition, in discussing Dr. Streb's opinion in the first-round sequential analysis, the ALJ noted that Dr. Streb's recommended treatment included tapering alcohol and that Dr. Streb had urged Plaintiff to consider taking different medications to decrease his alcohol use. (PageID.35 (citing PageID.1828 and 1858).) Thus, the ALJ's discussion elsewhere in the decision adequately demonstrates support for her conclusion that Dr. Streb's opinion was not persuasive in the absence of alcohol abuse.

### III.    RFC Finding

Last, Plaintiff contends that the ALJ erred in evaluating Plaintiff's RFC by omitting a limitation for use of a cane. In discussing this issue, the ALJ noted the absence of physical

examinations "showing an inability to ambulate effectively or gait abnormality or any other physical issue that warrants the use of a cane." (PageID.42.) In addition, the ALJ cited Dr. Streb's March 1, 2022 assessment indicating that Plaintiff did not need a cane or assistive device. (*Id.* (citing PageID.1832.) Plaintiff contends that the ALJ erred in failing to include the need for a cane in her RFC finding and rejecting Plaintiff's testimony regarding his need for a cane because in September 2022, Dr. Streb prescribed Plaintiff a cane for gait instability. (PageID.2493.)

Any error, however, was harmless. Plaintiff testified that he takes his cane "everywhere," but he was still able to perform his job as a dishwasher because he was able to lean against the machine and still rinse and load the dishes into the dishwasher without using it. Plaintiff testified that he would need the cane, for example, when walking to the dining room to take a break. (PageID.70.) When the ALJ asked the VE whether the light jobs she had identified would remain "if the individual needed a one-handed assist[ive] device to ambulate to and from the workstation," the ALJ said that the light assembler and inspector positions (285,000 total) would remain because they "tend to be station positions." (PageID.81.) The VE also identified the position of sorter, with 90,000 positions available nationally, as an additional position that would be considered a job at a "stationary work station." (PageID.82.) Thus, even if the Court remanded on this issue, the step-five finding would remain. *See Scott v. Comm'r of Soc. Sec.*, No. 14-11500, 2015 WL 4634077, at *7 (E.D. Mich. July 6, 2015), *report and recommendation adopted*, 2015 WL 4633927 (E.D. Mich. Aug. 3, 2015) ("Under these circumstances, any error by the ALJ in failing to include plaintiff's need to use a cane for walking and standing is harmless because the vocational expert specifically testified that a significant number of jobs in the light work category were available for a person with plaintiff's RFC as stated by the ALJ and who needed to use a cane for walking and standing. Thus, a remand is not necessary."). Although the ALJ did not cite the VE's testimony regarding

16

use of a cane, it is nonetheless substantial evidence which supports the ALJ's decision. *See Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2020 WL 9460505, at *14 (N.D. Ohio July 7, 2020), *report and recommendation adopted*, 2021 WL 1540389 (N.D. Ohio Apr. 19, 2021) ("Although the ALJ did not cite this testimony when he found that Austin could perform work in the national economy . . . , it is nevertheless substantial evidence which supports the ALJ's conclusion."). Thus, any error in failing to include use of a cane in the RFC finding was harmless.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, the Commissioner's decision will be **affirmed**.

An order consistent with this opinion will enter.

Dated: March 27, 2025                         /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              U.S. Magistrate Judge

17